**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | |
|---|---|
| JOSUE HERNANDEZ,  )  | |
|     Plaintiff,  ) | |
| ) | Civil Action No. _____ |
| v.  ) | |
| ) | |
| CITY OF CORPUS CHRISTI, TEXAS;  ) | JURY TRIAL |
| ALLAN MILLER, INDIVIDUALLY;  ) | |
| GILBERT A. CANTU, INDIVIDUALLY;  ) | |
| LEONARD PREISS, INDIVIDUALLY;  ) | |
| AND GENAROSE M. PENA,  ) | |
| INDIVIDUALLY | |
|     Defendants. | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, Josue Hernandez, filing this, his Plaintiff's Original Complaint, and bringing this action against the City of Corpus Christi, Texas, Allan Miller, Individually, Gilbert A. Cantu, Individually, Leonard Preiss, Individually, and Genarose M. Pena, Individually, as said Defendants, jointly and severally, have denied Plaintiff's rights guaranteed by the Constitution and laws of the United States of America and the State of Texas.

**JURISDICTION AND VENUE**

1.    This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). This court also has supplemental jurisdiction pursuant to 28 U.S.C.S. § 1367 to hear the state claims set forth in this complaint. Venue is proper in the Southern District of Texas, Corpus Christi Division, as this is the district where the claim arose in accordance to 29 U.S.C.§ 1391(b).

**PARTIES**

2.    Plaintiff Josue Hernandez brings this suit in his own behalf.

3. Defendant City of Corpus Christi, Texas, (hereinafter, the "City"), is a political subdivision of the State of Texas and can be served with summons upon City of Corpus Christi, Texas, Mayor, 1201 Leopard Street, Corpus Christi, Texas 78401 or P.O. Box 9277, Corpus Christi, Texas 78469.

4. Defendant Allan Miller, Individually (hereinafter, "Miller") was, at all times material to this suit, an officer employed by the Corpus Christi Police Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed during of his employment with the Corpus Christi Police Department. Defendant may be served with summons at his place of employment, Corpus Christi Police Department, 321 John Sartain St., Corpus Christi, Texas 78401.

5. Defendant Gilbert A. Cantu, (hereinafter, "Cantu") was, at all times material to this suit, an officer employed by the Corpus Christi Police Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed during of his employment with the Corpus Christi Police Department. Defendant may be served with summons at his place of employment, Corpus Christi Police Department, 321 John Sartain St., Corpus Christi, Texas 78401.

6. Defendant Leonard Preiss, (hereinafter, "Preiss") was, at all times material to this suit, an officer employed by the Corpus Christi Police Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed during of his employment with the Corpus Christi Police Department. Defendant may be served with summons at his place of employment, Corpus Christi Police Department, 321 John Sartain St., Corpus Christi, Texas 78401. Genarose M. Pena

7.      Defendant Genarose M. Pena, (hereinafter, "Pena" and together with, Miller, Cantu and Preiss, the "Individual Defendants") was, at all times material to this suit, an officer employed by the Corpus Christi Police Department. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed during of his employment with the Corpus Christi Police Department. Defendant may be served with summons at his place of employment, Corpus Christi Police Department, 321 John Sartain St., Corpus Christi, Texas 78401.

## FACTS

The Shooting and Immediate Aftermath

8.      Whenever in this complaint it is alleged that any Defendant did any act, thing, and/or omission, it is meant that Defendant and/or Defendant's officers, agents, servants, employees or representatives did such act, thing and/or omission and that at the time it was done with full authorization and/or ratification of Defendant or done in the course of employment of Defendant and/or Defendant's officers, agents, servants, employees or representatives.

9.      Mr. Hernandez is a thirty-five (35) year-old Hispanic male, who resided in Corpus Christi, Texas, at the time of the incident forming the basis of this case.

10.     Mr. Hernandez is married to Rose Hernandez ("Mrs. Hernandez"). Together, they have three (3) children: J.H., Jr., age thirteen (13); C.H., age ten (10); and A.H., age three (3).

11.     Prior to the date of this incident that is the basis of this lawsuit, Mr. and Mrs. Hernandez were separated, but were attempting to reconcile their relationship.

12.     Mr. Hernandez did not have any felonies or any other previous altercations with the police prior to the date he was shot by Defendant Miller.

13. On February 15, 2015, and prior to the arrival of the Individual Defendants, Mr. Hernandez allegedly got into an argument with a neighbor, Miguel (last name unknown), who, according to Mr. Hernandez, was a well-known drug dealer.

14. The altercation concerned an alleged affair between Miguel and Mr. Hernandez's wife. As the argument escalated Mr. Hernandez felt threatened by Miguel's actions and walked back into his house while Miguel was in his front yard.

15. At the time of the incident, Mr. Hernandez was aware of the recent string of home invasions and drive-by shootings in the area, including an attempted home invasion that occurred while his children were home alone.

16. Unsure about Miguel's participation in such criminal activity, during their brief exchange, Mr. Mr. Hernandez shot his licensed pistol into the air at least 10 minutes prior to the arrival of the Individual Defendants, in an attempt to defend his family, home, and property.

17. Thereafter, Miguel left the scene and Mr. Hernandez retreated into his home.

18. Mr. Hernandez remained in his home for about ten (10) minutes before he heard his dog barking at the fence to the right side of the house near the alleyway.

19. The dog was barking because it had confronted the Individual Defendants who were conducting clandestine investigatory activities in the rear perimeter of the house—in a neighborhood with an objectively verifiable high crime rate and that had experienced multiple break-ins.

20. Mr. Hernandez went outside to his backyard to investigate but was unable to see anybody clearly despite observing shadows moving around in the darkness.

21. About 15 to 20 seconds later, Mr. Hernandez, who was walking towards the left side of the backyard to investigate the strange unidentified subjects walking around, was shot in

the back-left side of his body by an unidentified individual who came into his backyard through the alleyway on the right side of his home.

22. The bullet ripped through Mr. Hernandez' left tricep, through the side of his bicep at a right directional angle and pierced his torso, just barely missing his heart.

23. At this point, Mr. Hernandez, feeling shock and unable to see in the dark, held his left arm with his right arm, while still holding the pistol, and shot off 3 rounds in the direction he thought the bullet came from while stumbling backwards and falling through his garage door, dropping his pistol.

24. Defendant Miller, the shooter, did not announce his presence as an officer nor did he attempt to make Mr. Hernandez aware of this fact prior to blind opening fire. None of the responding officers issued any warning or other commands before firing.

25. At 8:13 pm, a request for an ambulance is heard on the radio of one of the police vehicles.

26. Approximately seven (7) police units were dispatched to Mr. Hernandez' residence.

27. There were no sirens alerting the community that the police were present. Mr. Hernandez could not see these police units as he was located in his backyard.

28. Mr. Hernandez attempted to call 9-1-1 two times after he was shot, but was not connected on either try. Giving up hope of reaching the police, Mr. Hernandez picked himself up and tried to find help from one of his neighbors.

29. To do this, he Mr. Hernandez stumbled back into his house and struggled to make it to the front door.

30. Once he opened the front door, he noticed approximately ten (10) to fifteen (15) police officers with their guns drawn. The police cars were neither flashing their lights nor were their sirens on.

31. The police instructed Mr. Hernandez to put his hands above his head and get on the ground, which he proceeded to do.

32. The police officers then came over and handcuffed Mr. Hernandez, as he pleaded with them to help him as he had been shot and did not know who shot him. Mr. Hernandez received medical attention from an on-scene paramedic until the ambulance arrived to transport Mr. Hernandez to the hospital (ICU).

*33.* During this time, an unidentified officer is also heard stating to Defendant Miller *"Expect TDI to interview you. They are going to give you a random warning…Even though you did everything right, 100%. He is still alive right now, so it's not murder."*

*34.* During this time, an officer sitting with Defendant Miller is heard stating that *"I'm sitting here with Allen. He's doing good. No one else could even shoot. No, that was it."*

<u>Post-shooting Miranda Violation</u>

35. At the hospital, Mr. Hernandez was given treatment for his injuries and also informed that he was under arrest for the attempted capital murder of a police officer and was handcuffed to the bed. Mr. Hernandez was then approached by police officers who took him into custody and proceeded to interrogate him. Mr. Hernandez had not been read his Miranda rights before the commencement of this interrogation.

36. Mr. Hernandez requested to speak with an attorney several times, but was told by officers that he could not do so at that time. The officers proceeded to continue interrogating Mr. Hernandez as he made repeated demands for an attorney. When Mr. Hernandez was taking

6

medication for pain relief, he was once again interrogated by police officers, and in that state, he told them his story and answered questions.

37. Two weeks after he was first taken into custody, Mr. Hernandez was able to meet with an attorney. He was represented at trial by Mr. Mark A. Gonzales and Mr. Matthew Manning. The District Attorney ("DA") offered Mr. Hernandez a plea deal, but he would not accept it. Upon his refusal, the DA delayed the trial. This occurred approximately four (4) or five (5) times.

Malicious Prosecution/Trial Facts

38. After being incarcerated for fifteen (15) months, Mr. Hernandez's trial commenced for one count of attempted capital murder of a police officer and three counts of aggravated assault.

39. Mr. Hernandez was found not guilty[1] as to the attempted capital murder charge because Mr. Hernandez did not know that the person who shot him was a police officer as it was very dark outside, Mr. Hernandez was shot from behind, and the police officer did not identify himself to be a police officer or yell freeze, and Mr. Hernandez's house had a recent history of burglaries and home invasions.

40. Upon information and belief, other officers present at the scene testified and swore that they did not hear the shooter, Defendant Miller, identify himself as a police officer or tell Mr. Hernandez to put his gun on the ground or not to move. Neither the officers nearby nor Mr. Hernandez heard any warnings given to Mr. Hernandez prior to Defendant Miller shooting him.

41. Despite, Defendant Miller's testimony at trial, the medical evidence indicates that Mr. Hernandez though was shot from behind.

---

[1] However, the jury did find Mr. Hernandez Guilty of attempted aggravated assault as to the Individual Defendants.

42. Also, a Sergeant, who was standing next to Defendant Miller, stated at trial that the backyard was pitch black and that he (and presuming other officers) could not see anything.

43. When Defendant Miller was cross examined about the possibility that he did not see Mr. Hernandez point the gun at him because of how dark it was in the backyard, Defendant Miller agreed that this was a possibility.

44. Upon information and belief, Defendant Miller committed perjury during the trial when he testified that he flashed his flashlight at Mr. Hernandez; none of the other officers who were with Defendant Miller at the time of the shooting saw him do this.

45. During discovery, it was revealed that Defendant Miller's flashlight's lens was cracked and was not working during the time of this incident.

46. Plaintiff is informed and believed, and thereupon alleges that in committing the foregoing acts and/or omissions, the Defendant was the agent and employee of the City and was acting within such agency and employment and that each Defendant was acting under color of state law.

47. Furthermore, the excessive force committed against Mr. Hernandez by Defendant Miller was not performed in good faith manner to maintain or restore discipline, but was committed maliciously, intentionally, and sadistically for the very purpose of punishing and causing injury to Mr. Hernandez.

48. At all pertinent times, Defendants City of Corpus Christi and/or Corpus Christi Police Department authorized and/or ratified the wrongful and tortious acts and/or omission described herein.

## **FIRST CLAIM FOR RELIEF - - §1983**

49. The allegations contained in the foregoing Paragraphs are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

8

50. The Civil Rights of 1871, now codified as 42 U.S.C.S. §1983 as federal law provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.S. §1983.

51. The state action requirement for standing under 42 U.S.C.S. §1983 has more commonly been referred to as "color of state law," from the statute itself. Plaintiff is informed and believe, and thereupon alleges that, in committing said acts and/or omissions, Defendant Miller was the agent and employee of each other Defendant and was acting within such agency and employment and that Defendant Miller was acting under color of state law.

52. 42 U.S.C.S. §1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States. As such, Plaintiff alleges that Defendants, jointly and/or severally deprived him of his Fourth Amendment rights and those rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the Constitution incorporated and applied to the states through the Fourteenth Amendment. Defendants violated this provision by the following actions and/or omissions, *inter alia*:

   a) by attempting to detain Mr. Hernandez in violation of his Fourth Amendment expectation of privacy and guarantee to security from unreasonable search and seizure without reasonable suspicion and/or probable cause;

   b) by using excessive force and/or deadly force in the course of Defendant's investigation and/or custody of Mr. Hernandez. Said actions resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable; and

      c)      by failing to intervene, where such intervention would have prevented the injuries to Plaintiff.

    53.    Defendant's actions and/or omissions were not "objectively unreasonable" in light of the facts and circumstances confronting them without regard to their underlying intent or motivation. The facts and circumstances of this particular case demonstrate the unreasonableness of Defendant's actions. Since Mr. Hernandez was not being detained or specifically investigated, it is initially absurd that Miller would deem force (much less deadly) was warranted and/or required and that the Individual Defendants would do nothing to intervene on Mr. Hernandez's behalf, especially since Mr. Hernandez never posed an immediate threat to the safety of the Individual Defendants. For these and other reasons, it was objectively unreasonable for Defendant to open gunfire on Mr. Hernandez without warning.

    54.    Under §1983, Defendant City of Corpus Christi is also liable for failing to supervise and/or failing to train, and/or acquiescence in unconstitutional behavior by subordinates. First, said Defendant failed to properly train and failed to properly supervise their officers. Said Defendant are liable under §1983, as there is a causal connection between his actions and/or omissions and the alleged constitutional violations, as outlined throughout this entire pleading. In fact, said Defendant did not reprimand the Individual Defendants' conduct and did not punish him accordingly, thereby sanctioning his actions, resulting from and amounting to a departmental policy that violated Plaintiff's civil rights. Said Defendant's failure to supervise or train amounted to gross negligence and/or deliberate indifference.

    55.    It is also well-established that municipalities are liable under 42 U.S.C.S. §1983 for constitutional torts that are in compliance with their customs, practices, policies or procedures. A municipality is liable for constitutional deprivations visited pursuant to governmental custom even

10

though such custom has not received formal approval through the body's official decision making channels.

56. In this case, Defendant City of Corpus Christi is liable because they sanctioned the custom, practice and/or policy or procedures of, inter alia, 1) using excessive, and oftentimes deadly force, to effectuate what are (or, as in this case, would be) otherwise routine arrests, 2) using deadly force when such is not necessary and/or allowable, 3) ignoring the serious need for training and supervision of their officers in regards to the use of force, 4) failing to discipline those persons whom are found to have engaged in the use of excessive force upon those entrusted to their care and/or under their control, 5) failing to adequately supervise and/or observe their employees and/or officers including reservist, and 6) failing to provide adequate training in regard to the availability of alternative means of detaining persons apart from the use of force and/or deadly force. Such policy and/or customs were the "moving force" behind the constitutional violation (excessive force) exacted upon Mr. Hernandez and was the "cause in fact" of his injuries.

57. The actions and/or inaction taken in this case was uncalled for and taken pursuant to the customary practices and/or policies or procedures that were sanctioned by all named entity Defendants. Liability for Defendant City of Corpus Christi is established under §1983 because the approach to the immediate use of excessive force (in more particular, deadly force) is a persistent, widespread practice of the city employees—namely police officers—that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official policy.

58. Defendant City of Corpus Christi had actual or constructive knowledge of each practice, custom, and/or policy or procedure and numerous prior incidents of such conduct and/or inaction as to establish accession to that custom by the policy makers. Defendants City of Corpus

Christi unspoken policies above is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory rights will follow the decision.

59. In the alternative, Defendant City of Corpus Christi is liable under §1983 for failing to adopt clear policies outlining the criteria for determining the need for, the availability of and/or the means by which to use force and/or deadly force.

60. Moreover, Defendant City of Corpus Christi is liable for the inadequate training of their officers under §1983. Liability attaches to Defendant City of Corpus Christi because their failure to train amounts to deliberate indifference to the rights of the persons with whom they come in contact.

61. Plaintiff further alleges that Defendants, jointly and/or severally have violated his Fourth Amendment rights when he was unreasonably and unlawfully shot and detained.

### § 1983 - Qualified Good Faith Immunity

62. Qualified good faith immunity stands for the proposition that even though the civil rights of a complainant may have been violated, if the officer engaged in the conduct in good faith there is no liability for that individual. The standard by which an officer's entitlement to good faith qualified immunity is objective not subjective. The determination of objective reasonableness must be based on a version of the facts most favorable to the Plaintiff. To the extent that credibility or fact questions exist, a fact-finder continues to be necessary. In the instant case, Plaintiff alleges that The Individual Defendants were not entitled to claim "qualified good faith immunity." Importantly, the Individual Defendants never had a good faith belief in his conduct because he acted in a manner demonstrating that he was plainly incompetent and knowingly violated Mr. Hernandez's civil rights. When the pleadings (and/or facts) are taken in the light most favorable to the Plaintiff, it is clear that Mr. Hernandez was simply running away

from the Individual Defendants (who were at this time, unidentified shadowy figures in his backyard) and that at no time did he brandish a weapon and/or give the Individual Defendants cause for alarm.  Any reason given by Defendant Miller (or any of the other Individual Defendants) for his/ their unlawful actions does not warrant the application of qualified good faith immunity because the Individual Defendants were never in danger nor was any other persons in the vicinity in danger.

## SECOND CLAIM FOR RELIEF (Assault)

63. The allegations contained in Paragraphs 1 thru 64 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.  Any reference to "Defendant" in this section only applies to the aforementioned Defendant Miller and does not include Defendant City.

64. As a pendent state cause of action, at all times material and relevant herein, Defendant, by acts and/or omissions did then and there by acts/and/or omissions, intentionally, knowingly and/or recklessly cause severe personal injury to Mr. Hernandez through unconsented physical contact with him.

65. Under Texas law, the cause of action for excessive force is simply one for assault and battery.

66. Consequently, Plaintiff allege said injuries were the direct and immediate consequence of Defendant's wrongful acts and a natural and direct result of the assault.

67. At no time was Defendant privileged to take the action, as force was not necessary. Moreover, Defendant's assault and battery of Mr. Hernandez was not objectively reasonable when balancing the amount of force used against the need for the force.

13

## DAMAGES

68. As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, Plaintiff has been caused to suffer general damages which include, but are not limited to, the following: both physical and emotional injury, pain and suffering, and emotional and mental distress, and shock, along with severe emotional distress, associated with the shooting of Mr. Hernandez.

69. Said injuries have caused Plaintiff to incur special damages which include, *inter alia*, but are not limited to: medical expenses and lost wages.

70. Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C.S. §1988, a prevailing party in a §1983 case is entitled to recover its attorney's fees. Hence, Plaintiff further prays for all costs and attorney fees associated with bringing the present case to trial.

71. In addition, Plaintiff prays for punitive damages against Defendant Miller. Punitive damages are designed to punish and deter persons such as Defendant Miller who has engaged in egregious wrongdoing. Punitive damages may be assessed under §1983 when a Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays that upon trial upon the merits, Plaintiff recovers compensatory damages against Defendants, jointly and severally; that Plaintiff also recover punitive damages against Defendant Miller in an amount to punish and/or deter and to make an example of Defendant Miller in order to prevent similar future conduct; and that Plaintiff recover against each Defendants all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation. Moreover, Plaintiff prays for all prejudgment and post-judgment interest that can be assessed against the Defendants in the event

of recovery; and that Plaintiff recovers against each Defendant any and all other general or specific relief to which she proves herself justly entitled.

                                   Respectfully submitted,

                                   THE OBI LAW FIRM, PLLC

                                   By:   /s/ Emmanuel U. Obi
                                           EMMANUEL U. OBI
                                           State Bar No. 24058347
                                           1910 Pacific Avenue
                                           Suite 11700
                                           Dallas, Texas 75204
                                           T: 855.462.4529
                                           F: 855.988.5677
                                           E: eobi@obilawfirm.com

## **Demand for Jury Trial**

Plaintiff hereby demands trial by jury pursuant to Fed.R.Civ.P. 8(b).